THE STATE OF OHIO, APPELLEE, *v.* ZIDAK, APPELLANT.

465

(No. 870—Decided May 16, 1951.)

*Mr. William H. Irwin,* prosecuting attorney, for appellee.

*Mr. Paul V. Waddell* and *Mr. Austin C. Furbee,* for appellant.

PHILLIPS, J. The grand jury of Belmont county indicted defendant for unlawfully, maliciously and forcibly breaking and entering a store of the Great Atlantic & Pacific Tea Company, situated in Bellaire, Ohio, during the night season on the 8th day of April 1950 with the intent to commit larceny therein.

Upon trial the jury found defendant guilty as charged in the indictment laid under Section 12438 of the General Code.

The trial judge entered judgment of guilty and imposed sentence upon the verdict of the jury and over-

ruled defendant's motion for a new trial. Defendant appealed from that judgment to this court on questions of law.

By assignments of error defendant contends that "the court erred in the admission of evidence offered by the plaintiff and objected to by the defendant; erred in the rejection of evidence offered by the defendant; erred in overruling defendant's motion for mistrial made during the offering of plaintiff's evidence; erred in overruling defendant's motion for mistrial made at the close of plaintiff's case"; and "erred in overruling defendant's motion to require the plaintiff to produce an exhibit offered by defendant."

By such assignments of error defendant charges the state's attorney with misconduct "in exhibiting to the jury a criminal record report of the defendant, including picture and fingerprints, and which record was not introduced in evidence"; and charges a juror with misconduct "in that a juror inspected a criminal record report of the defendant, including picture and fingerprints, which report was not introduced in evidence."

Finally defendant contends that there was "irregularity in the proceedings of the court and jury to which defendant objected at the time"; that "the verdict of the jury is against the manifest weight of the evidence and appears to have been given under the influence of passion or prejudice"; and that there are "other errors of law apparent on the face of the record prejudicial to defendant and by reason of which he was prevented from having a fair trial."

One of the state's witnesses identified defendant as the man he saw walking in the center of the dimly lighted store of the Great Atlantic & Pacific Tea Company about eleven o'clock on the night of April 8, 1950, and testified that at that time a horn was sounded on a truck parked in front of such store, and the lights thereof turned on, and that he saw defendant

leave the office or cage of such store and go toward the rear thereof.

That witness reported what he had seen to the police department of the city of Bellaire, and a member of that department returned with him to such store, in front of which the truck was still parked, and in which two men were seated. He designated defendant seated therein to the police officer as the man he had seen in the store. Whereupon such man immediately left the truck and started to run. The police officer pursued him and shot at him but did not catch or arrest him.

No person testified to seeing defendant break or enter the store of the Great Atlantic & Pacific Tea Company, the door of which had been pryed off. An assortment of tools, including a screw driver, saw, pincers such as blacksmiths use, a flashlight, coal cutter, iron-wrecking bar, large punch, and a malleable iron plate with four seven-sixteenth inch holes bored in it, one on each corner thereof, and an additional hole running the entire length of the center thereof, which was described as a "puller," found in the truck in which defendant had been seated and which the state claimed were burglar's tools, were identified as the property of the owner of such truck.

Defendant introduced testimony of witnesses who testified they saw him in a Wheeling bus station between 8:30 and 9 o'clock on the night of Saturday, April 8, 1950, at which time he allegedly bought a ticket for Pittsburgh. There is evidence that at the time he was in Pittsburgh he allegedly was seen in the store of the Great Atlantic & Pacific Tea Company in Bellaire; that he arrived at his home there with his son close to 12 o'clock of that day, and left there on Easter Sunday to return to Bellaire, where he was employed.

The trial judge permitted a former deputy sheriff

of Monroe county to testify, over defendant's objection, that when he was deputy sheriff of that county in the years 1931 to 1934 he brought defendant back from Louisiana to Monroe county to answer to the charge of receiving stolen property, and that he lodged defendant in the jail of that county. The trial judge sustained defendant's objection to the introduction by the state of a purported record of Monroe county with reference thereto and his motion to strike all such testimony from the record of the case.

It is the claim of defendant "that the court erred in admitting such testimony over defendant's objection, and that the facts testified to and the prejudice thereby created in the minds of the jurors could not be erased from the minds of the jurors by the court's instructions to disregard the same."

By brief defendant says:

"We assume that the state intended to prove the commission of a similar crime by defendant. It wholly failed to properly do so and only showed that the defendant had been arrested and had been in jail.

"The state made no explanation of the purpose for which such testimony was being offered. If it was offered for the purpose of attacking defendant's character or reputation, then it most certainly was erroneous and prejudicial because defendant's character and reputation had not been put in issue by the defendant and was not put in issue in the defendant's case. Such testimony was not admissible for the purpose of attacking defendant's credibility as he had not testified and did not testify in the case.

"If such testimony was offered to prove the motive, intent, etc., of the defendant, under the provisions of Section 13444-19, G. C., it was erroneous and prejudicial."

Upon conclusion of the testimony of such deputy sheriff, counsel for defendant said, "now your honor

there was no follow-up,'' and the bill of exceptions discloses the following proceedings were had:

''Court: Do you want the jury taken out?

''Mr. Furbee: Perfectly willing that they remain here.

''Mr. Furbee: The defendant now moves that all of the testimony of the witness, Clarence Crawford, with reference to the paper marked 'PX-14' be stricken from consideration by the jury and the jury instructed to disregard it, and defendant further moves that all of the testimony of the witness, Clarence Crawford, with reference to Joseph Zidak be stricken and the jury instructed to disregard it.

''Court: The motions will be sustained. Members of the jury, you are instructed that the testimony of Clarence Crawford, who just left the witness stand, is stricken from the record in this case and that you will totally disregard that evidence and give no further consideration of the same in this case, the same as if it had not even occurred.

''Mr. Furbee: The defense has another motion to make that we would like to make in the absence of the jury.

''Court: Dictate it into the record.

''Mr. Furbee: The defendant moves, first: that the court instruct the jury to return a verdict of 'not guilty' and discharge the defendant for failure of proof. Second: the defendant moves the court that the defense be permitted to inspect the papers and pictures and fingerprint sheet that the prosecution counsel had on their table during a part of this trial in the presence of the jury and which was inspected by at least one member of the jury, and we ask to be heard on these motions.

''Court: Both motions are overruled.

''Mr. Furbee: Defendant excepts to the ruling of the court and excepts to the refusal of the court to

permit counsel to be heard upon this motion. Defendant now moves that the court declare a mistrial in this case for the reason given in the previous motion for mistrial which is that this jury was permitted to sit in the Court of Appeals and hear the prosecutor and other counsel argue a murder case and listen to the comments of the Court of Appeals on crime and punishment thereof, and for the further reason that during this trial the prosecutor had on his table for a period of the trial a paper that appeared to be a criminal record report with a picture and fingerprints purporting to be that of Joseph Zidak, and that it was in plain sight of the jury, and in addition thereto, one of the jurors picked up the pictures and record and inspected them. Said paper and pictures were not introduced in evidence and are not in this case and, therefore, it is error for the jury to have this information that they now have.

"Court: Do you want to argue that?

"Mr. Furbee: I am very seriously wanting to argue it.

"Court: Overruled.

"Mr. Furbee: Exceptions.

"Mr. Furbee: The defense offers in evidence, in support of the motion for mistrial and for that purpose only, the pictures and paper in question and demands that the prosecutor produce said paper for this record.

"Court: Overruled."

At the close of the state's case in chief, the trial judge overruled defendant's motion to compel it to produce such criminal record report and picture for the inspection of defendant's counsel, to which reference is made in disposing of another assignment of error.

Defendant waived his right to rely on the claimed

error that the trial judge erred to his prejudice in overruling his motion for a verdict to be directed in his favor when he accepted the ruling of the court and proceeded with his defense and introduced evidence in his own behalf. *Halkias* v. *Wilkoff Co.*, 141 Ohio St., 139, 47 N. E. (2d), 199.

With reference to the testimony of the deputy sheriff, the admonition and instructions of the trial judge to the jury were couched in plain, simple, clear and unambiguous language, and the assumption is that the jury heeded his admonition and obeyed his instructions. In the absence of a showing of anything to the contrary, we can indulge in no presumption other than that the jury disregarded such testimony and gave it no consideration. We conclude that no error prejudicial to defendant intervened, as urged in this assignment of error.

Apparently at that time counsel for defendant was satisfied with the ruling of the trial judge for he did not request a mistrial on the ground that any error allegedly committed by the trial judge in that respect had not been cured. Rather he moved for a mistrial on the two specific grounds stated in his motion quoted *supra*.

Now we come to consider defendant's assignment of error that there was misconduct of the prosecuting attorney and the jury, to which reference was made *supra*.

Counsel for defendant by brief state:

"During the offering of the state's case in chief the prosecuting attorney placed upon his table in a position close to the jury box and in plain view of the jurors a criminal record report of this defendant, which had as the top page thereof a picture of the defendant with fingerprints. This report and picture were picked up and examined by one of the jurors dur-

ing a recess of the trial. At that time counsel for the defendant protested to the trial court and the prosecutor then, at the court's direction, removed such report and picture from the view of the jury. These facts are substantiated by an affidavit filed in support of motion for new trial. Said report and picture were not offered in evidence by the state and at the close of the state's case defendant made a motion for mistrial for such misconduct of the prosecutor and jury (Rec. p. 75). This motion for mistrial was overruled and we contend that the trial court was in error in so doing."

In view of lack of evidence that any juror examined any one of such exhibits and of positive evidence that when attention of the state's counsel was directed to their presence they were removed immediately, we conclude that defendant was not prejudiced thereby as alleged in this assigned ground of error.

As stated in the motion of plaintiff's counsel quoted *supra*, defendant's trial was recessed for the purpose of permitting this court to occupy the courtroom in which his trial was being held to hear the appeal of a defendant charged with murder in the perpetration of rape of a young girl. Now it is claimed that as the result thereof "irregularity in the proceedings of the court and jury" intervened to defendant's prejudice. In the interest of accuracy we quote from defendant's brief his contention with reference to this assignment of error.

"The prosecutor went into considerable detail in describing the atrocities of the crime which was the attempted rape and murder of a young girl. Some members of this court commented at length upon crime, detailed facts of another murder case recently decided by this court and also deplored the attitude of some people who were not in favor of the punishment

provided by law for crime. The jurors in this case sat among the audience in the courtroom and listened to all of the foregoing proceedings and comments with reference to the Doty murder case. The foregoing facts are sustained by an affidavit filed in support of motion for new trial.

"At the first opportunity, which was the reconvening of the trial of this case immediately following said proceedings before the Court of Appeals, counsel for defendant made a motion for mistrial based upon the irregularity above mentioned (Rec. p. 5). The court overruled this motion without even permitting counsel to be heard upon the same. It is the contention of defendant that this irregularity was prejudicial to the defendant and prevented him from having a fair and impartial trial of his case by jurors uninfluenced by other matters. The jurors could not help but be impressed by what they heard the prosecutor say in support of the conviction of Doty. It was a so-called sensational crime. It goes without saying that these laymen jurors, composed of housewives, farmers and laborers, would be impressed by the comments made by this court. It was likely the only time that many of these jurors had ever been present at a session of the Court of Appeals. What a judge of this court had to say about crime and the deplorable attitude of some people in not being willing to apply the punishment provided by law to a crime could not help but impress at least some of these jurors. The trial court admonished the jurors from time to time during the trial as to their conduct as jurors and the importance of not talking to people about this case and so forth. The purpose of such admonition is to prevent the jurors from being influenced by other than the evidence and the law as given them by the court. To break into the middle of their attention and thinking of the trial of

this case with the irregularity mentioned circumvents the admonition of the trial court. Such happenings most certainly constituted an irregularity in the trial of this case and it is a reasonable presumption that it would be prejudicial to the defendant.''

Assuming that certain members of the jury were present in the courtroom during the argument of such appeal, there is nothing indicating that their presence in the courtroom or anything they may have heard during argument of such appeal in any way tended to influence the jury, or any of its members, to the defendant's prejudice, or induced them to render their verdict in the case we review other than upon the law and the evidence.

While defendant has assigned he has not argued the ground of error that the trial judge erred in his general charge to the jury. Accordingly we will not pass upon this assigned ground of error.

Defendant's counsel have failed to call our attention to ''other errors of law apparent on the face of the record prejudicial to defendant and by reason of which he was prevented from having a fair trial,'' as alleged as a ground of error, or to comply specifically in respect thereto with the provisions of Rule VII of this court that his briefs ''shall contain a statement of the questions presented and a succinct statement of so much of the cause, referring to the pages of the record, as is necessary to show how the questions arose, together with a statement of the authorities relied upon.'' Accordingly we will not pass upon this assigned ground of error.

We have read the bill of exceptions submitted to us for review, and as the result thereof conclude that we can not reverse the judgment of the trial court on the urged ground that it is against the manifest weight of the evidence or was rendered under the influence of passion or prejudice.

The judgment of the Court of Common Pleas is affirmed.

*Judgment affirmed.*

GRIFFITH, J., concurs.
NICHOLS, P. J., concurs in the judgment.